UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORIYAH HAMELL,

       Plaintiff,

V.                                      Case No.: 24-11074
                                       Hon. Shalina D. Kumar

RIVER ROUGE SCHOOL DISTRICT,
MARK WHITE and DERRICK COLEMAN,

       Defendants.
_____/

| RENETTE JACKSON (P69002) | TIMOTHY J. MULLINS (P28021) |
|---|---|
| Attorney for Plaintiff | CHRISTOPHER D. MESSING(P78900) |
| 26677 W. 12 Mile Road | GIARMARCO, MULLINS & HORTON, P.C. |
| Southfield, MI 480340 | Attorneys for Defendants, River Rouge School District and Coleman |
| (248) 910-5415 | 101 W. Big Beaver Road, 10th Floor |
| arjackson@ajatlaw.net | Troy, MI 48084-5280 |
| | tmullins@gmhlaw.com |
| | cmessing@gmhlaw.com |
| | |
| | David Nacht (P47034) |
| | Fabiola Galguera (P84212) |
| | Attorneys for Defendant Mark White |
| | 501 Avis Drive, Suite 3 |
| | Ann Arbor, MI 48108 |
| | (734) 663-7550 |
| | dnacht@nachtlaw.com |
| | fgalguera@nachtlaw.com |

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS RIVER ROUGE SCHOOL DISTRICT, DERRICK COLEMAN, AND DR. WILLIE L. WHITE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c)**

 NOW COMES Plaintiff, MORIYAH HAMELL, by and through her attorney, RENETTE JACKSON, and respectfully submits this Response in Opposition to

Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(c) and states as follows:

I.     **FACTUAL & PROCEDURAL BACKGROUND:**

Plaintiff was a minor student at River Rouge High School, and a player on the Girl's Basketball Team. During such time, she was subject to sex-based harassment and assault by Defendant, Mark White in 2017. At all times relevant, Mark White, was the Head Coach of the Girls and Boys Basketball teams. On April 9, 2024, Plaintiff initially filed the pending complaint in the Third Judicial Circuit Court, Detroit, Michigan. The complaint set forth four claims: Count (1) Assault and Battery, Count (2) Title IX Violation, Count (3) Violation of Constitutional Due Process, and Count (4) Violation of Elliott-Larsen Civil Rights Act. Id. Based on the federal claims, the Circuit Court transferred the case to federal court.

At the time of the sexual assault in 2017, Plaintiff was a minor and said sexual assault was reported to the staff of the River Rouge High School for the school administrators did nothing about the sexual assault and failed to protect the Plaintiff. It is undisputed that the general statute of statute of limitations for an "Assault and Battery" is two years and the three-year statutes of limitations for the violations of Title IX and Constitutional Violations to Due Process. However, recent amendments and enactment of MCL 600.5851b provides an exception to the statute of limitations, thereby preserving Plaintiff's right to file a claim until the age of 28.

## II. STANDARD OF REVIEW:

Fed. R. Civ. P. 12(c) provides that "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are governed by the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545F.3d 431, 434 (6th Cir. 2008). In other words, judgment under Rule 12(c) is appropriate when the pleadings establish that no material issue of fact remains to be decided and the movant is entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.,* 312 U.S. 45 (1941).

Fed. R. Civ. P. 10(c) provides that any exhibit to a pleading is a part of the pleading for all purposes. *See Sensations, Inc. v City of Grand Rapids*, 526 F.3d 291 (6th Cir 2008); *Mitchell through Mitchell v Community Mental Health of Central Michigan*, 243 F.Supp.3d 822 (E.D. Mich 2017). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." Northville Downs v. Granholm, 622 F.3d 579 (6th Cir. 2010) (citing Commercial Money Ctr., Inc., 508 F.3d at 335–36).

"To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state [s] a claim to relief that is plausible on its face.' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009). *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.2010); *CH Holding Co v Miller Parking* Co, 973 F.Supp. 2d 733, 736–37 (E.D. Mich. 2013).

III.     COUNTER-ARGUMENTS:

A.     TIME BARRED CLAIMS:

**1. PLAINTIFF'S CRIMINAL SEXUAL ASSAULT AND BATTERY, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM, GROSS NEGLIGENCE CLAIMS ARE NOT TIME BARRED WHERE THE STATUTE OF LIMITATIONS HAD NOT EXPIRED PRIOR THE 2018 ENACTMENT OF THE MCL 600.5851B:**

**MCL 600.5851b:**

In 2018, the Legislature amended the statute of limitations. Relevant here, the Legislature enacted MCL 600.5851b that reads in full as follows (emphasis supplied):

Sec. 5851b. (1) Notwithstanding sections 5805 and 5851, **an individual who, while a minor, is the victim of criminal sexual conduct** may commence an action to recover damages sustained because of the **criminal sexual conduct** at <u>**any time before whichever of the following is later:**</u>

(a)     **The individual reaches the age of <u>28</u> years.**

(b)     Three years after the date the individual discovers, or through the exercise of reasonable diligence should have discovered, both the individual's injury and the causal relationship between the injury and the criminal sexual conduct.

(2)     **For purposes of subsection (1), it is not necessary that a criminal prosecution or other proceeding have been brought as a result of the conduct or, if a criminal prosecution or other proceeding was brought, that the prosecution or proceeding resulted in a conviction or adjudication.**

(3)     **Regardless of any period of limitation under subsection (1) or sections 5805 or 5851,** an i**ndividual who, while a minor, was the victim of criminal sexual conduct after December 31, 1996** but **before 2 years before the effective date of the amendatory act that** added this section may commence an action to recover damages sustained because of the criminal sexual conduct within 90 days after the effective date of

the amendatory act that added this section if the person alleged to have committed the criminal sexual conduct was convicted of criminal sexual conduct against any person under section 520b of the Michigan penal code, 1931 PA 328, MCL 750.520b, and the defendant admitted either of the following:

(a) That the defendant was in a position of authority over the victim as the victim's physician and used that authority to coerce the victim to submit.

(b) That the defendant engaged in purported medical treatment or examination of the victim in a manner that is, or for purposes that are, medically recognized as unethical or unacceptable.

(4) **This section does not limit an individual's right to bring an action under section 5851.**

(5) As used in this section:

(a) "Adjudication" means that term as defined in section 5805.

(b) "Criminal sexual conduct" means that term as defined in section 5805. Credits. P.A. 1962, No. 236, § 5851b, added by P.A.2018, No. 183, Imd. Eff. June 12, 2018.

(emphasis added)

Plaintiff's claims for sexual assault and battery, negligence, intentional infliction of emotional distress and gross negligence survive summary judgment based on the tolling of the accrual dates under MCL 600.5851b. Plaintiff concedes that pursuant to MCL 600.5805(3), the applicable statute of limitations for a claim of sexual assault and battery is two years and claims for negligence, intentional infliction of emotional distress and gross negligence accrues in three years from the date of injury. It is undisputed that Plaintiff's claim occurred in the Fall of 2017, setting the statute of limitations expirations periods in Fall of 2019 and 2020. In 2018, the Legislature amended the statute of limitations for sexual assault claims extending or tolling the statute of limitations expiration under MCL 600.5851b.

In support of dismissal, Defendants cited the recent Supreme Court ruling in *McLain v. Roman Cath. Diocese of Lansing*, No. 165741, 2024 WL 3363931, at *13 (Mich. July 10, 2024) (holding that 2018 amendments of MCL 500.5805 did not apply retroactively). Plaintiff asserts, the holding in *McLain v. Roman Cath. Diocese of Lansing*, No. 165741, 2024 WL 3363931, at *13 (Mich. July 10, 2024) is inapplicable to this case. First, the issue addressed by the Supreme Court in McLain involved whether the extension of the statute of limitations should be applied retroactively under these specific circumstances presented in the reference case.  Specifically, in *McLain v. Roman Cath. Diocese of Lansing*, Plaintiff Brian McLain alleged he was abused by a priest when he was 16 in 1999, and argued the 2018 law should be applied retroactively to his claims to allow his lawsuit to be filed within three years of discovering mental health conditions related to the assault.

In response, Justice Megan Cavanagh, in a written opinion by the majority disagreed with McLain's interpretation of the law, stating, "...**we hold that it does not apply retroactively to resuscitate lapsed claims premised on past acts of criminal sexual conduct**," Cavanagh wrote of the 2018 law. "**Because plaintiff's complaint alleges damages caused by sexual abuse that occurred nearly <u>30 years ago</u>, it is untimely.**" The seven-member high court all agreed that the law extending the age of disclosure to 28 does not apply retroactively to claims like McLain's, who had attained the age of 46 years old.  Clearly, those circumstances are inapplicable to the facts of the pending case.

Accordingly, notwithstanding the cited statutes of limitations, under MCL 600.5805, minor victims of criminal sexual conduct may file a lawsuit at any time before they reach the age of 28. This provision does apply here because the statute of limitations for Plaintiff's claims for sexual assault and battery, negligence, and intentional infliction of emotional distress had not expired prior to the enactment of MCL 600.5851(b) and filed prior to the Plaintiff's 28th birthday. Equally, Plaintiff has benefit of the provision where the subject claims occurred within two years prior to the 2018 enactment. The statute took immediate effect on June 12, 2018, and the Legislature specifically chose to identify circumstances, at issue here, where retroactive application of the statute does attend, none of which is applicable in this case. Pursuant to the Supreme Court's analysis, MCL 600.5851b(1)(b) does not apply retroactively to claims that were already time-barred when the statute was enacted. Accordingly, Plaintiff's state claims under MCL 600.5851b are brought timely and do not frustrate any "policy" considerations for statutes of limitations.

**2.   PLAINTIFF'S FEDERAL CLAIMS: TITLE IX AND 42 U.S.C. § 1983 CLAIMS ARE NOT TIME BARRED AND SURVIVE PURSUANT TO MCL 600.5851B(1)(b):**

Plaintiff concedes the applicable statute of limitations for the § 1983 claims is three years. "[Section] 1983 claims are best characterized as tort actions for the recovery of damages for personal injury. Plaintiff argues, federal courts must borrow the statute of limitations governing claims arising from criminal sexual conduct from the state where the § 1983 action was brought. It cannot be reasonably disputed that the State has extended the statute of limitations for tort actions involving CSC of minors, which do not constitute "personal injury".

In *Cooey v. Strickland,* 479 F.3d 412, 416 (6th Cir. 2007), the Defendants argued that

Cooey's § 1983 action is barred by the statute of limitations. The Supreme Court has held that § 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). If a state has more than one statute of limitations for personal injuries, the state's residual or general statute of limitations governing personal injury actions is applied to all § 1983 actions brought in that state. *Owens v. Okure,* 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).[1]

Although *Wilson v. Garcia,* 471 U. S. 261, held that 42 U.S.C. § 1988 requires courts to borrow and apply to all § 1983 claims a State's personal injury statute of limitations, Wilson did not indicate which statute of limitations applies in States with multiple personal injury statutes. Pp. 488 U. S. 239-242. In this case, the injury involves sexual assault, not a personal injury intentional tort. Michigan's state's extension of the statute of limitation for the tort actions for CSC to the age of 28, therefore applies to § 1983 claims. Ohio. Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir.2003) (citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989) (en banc)).

"Under those principles, it is `the standard rule that [accrual occurs] when the plaintiff has complete and present cause of action.'" Wallace, ___ U.S. at ___, 127 S.Ct. 1091, 1095,

---

[1] H*eld:* Where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the State's general or residual personal injury statute of limitations. Pp. 488 U. S. 239-250.

2007 WL 517122, at *3 (quoting *Bay Area Laundry Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)). This occurs "when `the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry, 522 U.S. at 201, 118 S.Ct. 542).

Therefore, pursuant to 2018 enactment, when § 1983 claims arise in Michigan, as Plaintiffs' claims do in this instance, "the appropriate statute of limitations has been tolled until the age of 28. Accordingly, Plaintiff's avers, Michigan's enactment of the 2018 law, MCL 600.5851b, extending and/or tolling the statute of limitations for claims arising from criminal sexual conduct (CSC) of a minor, should be borrowed and applicable to the federal claims.

**B-D: GOVERNMENTAL IMMUNITY DEFENSE TO ALL OF PLAINTIFF'S FEDERAL CLAIMS:**

**1. THE DISTRICT, DR. WILLIE WHITE, AND COLEMAN ARE NOT IMMUNE FROM INTENTIONAL TORT CLAIMS ARISING FROM CRIMINAL SEXUAL CONDUCT UNDER GOVERNMENTAL TORT LIABILITY ACT (GTLA) AND IN CONSIDERATION TO THE LEGISLATURE'S APPROVAL OF BILL REMOVING THE "GOVERNMENTAL IMMUNITY" FROM PUBLIC UNIVERSITIES, COLLEGES OR SCHOOLS OR THEIR EMPLOYEES:**

Plaintiff has properly alleged that Defendants, School District, Willie White and Derrick Coleman had an obligation to protect Plaintiff, and similarly student athletes from a known or alleged sexual predator where notice has been provided or available, and failed to do so. With regard to the school district, Plaintiff asserts in Davis v. Monroe County Board of Education, the U.S. Supreme Court on May 24, 1999, ruled (5–4) that, under Title IX of the Federal Education Amendments (1972), school boards are liable for failing to stop student-on-student sexual harassment under certain circumstances. Davis v. Monroe County Board of Education, 526 U.S. 629, 143 L. Ed. 2d 839, 119 S. Ct. 1661 (1999).

Logically, if a school district is liable for failing to stop student on student sexual harassment, it is reasonable to conclude that a school district can be held liable for failing to stop a teacher/coach -student sexual harassment and/or assault. The Court must consider whether the criminal sexual conduct alleged in Plaintiff's complaint demonstrates a deliberate indifference to known acts of harassment–amounts to an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is an employer-coach rather than a student. The Court concluded that, in certain limited circumstances, it does.

Plaintiff avers, common law, also, has put schools on notice that they may be held responsible under state law for their failure to protect students from the tortious acts of third parties. See Restatement (Second) of Torts §320, and Comment a (1965). In fact, state courts routinely uphold claims alleging that schools have been negligent in failing to protect their students from the torts of their peers. See, e.g., *Rupp v. Bryant*, 417 So. 2d 658, 666—667 (Fla. 1982); *Brahatcek v. Millard School Dist.*, 202 Neb. 86, 99—100, 273 N. W. 2d 680, 688 (1979); *McLeod v. Grant County School Dist*. No. 128, 42 Wash. 2d 316, 320, 255 P.2d 360, 362—363 (1953). Plaintiff avers, both the "deliberate indifference" standard and the language of Title IX narrowly circumscribe the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of funding recipients. Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action.

The language of Title IX itself–particularly when viewed in conjunction with the requirement that the recipient have notice of Title IX's prohibitions to be liable for damages–also cabins the range of misconduct that the statute proscribes. The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary of the English Language 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").

Moreover, because the harassment must occur "under" "the operations of" a funding recipient, see 20 U.S.C. § 1681(a); §1687 (defining "program or activity"), the harassment must take place in a context subject to the school district's control, Webster's Third New International Dictionary of the English Language, supra, at 2487 (defining "under" as "in or into a condition of subjection, regulation, or subordination"; "subject to the guidance and instruction of"); Random House Dictionary of the English Language, supra, at 1543 (defining "under" as "subject to the authority, direction, or supervision of").

Plaintiff asserts, the subject Defendants ultimate argue entitled to absolute qualified immunity for all federal claims, despite any duty or evidence of reckless and deliberate indifference conduct. Plaintiff's claims establish that all Defendants indirectly encouraged the alleged sexual assault conduct of Defendant Mark White, by his hiring, and subsequent failure to properly supervise or monitor activities to protect students from an alleged sexual predator. Thus, the Defendant's independent or collective failures to inherent in their duty to protect the students constitutes evidences of indirect contributory conduct resulting in the subject criminal sexual conduct.

Recently, in June 2024, the Michigan Legislature has passed three bills, one of which would remove governmental immunity from school districts, and its employees or agents. Plaintiff avers, the "Access to Justice" plan reforms Michigan's statute of limitations laws in summary as follows:

(1) Extending civil statute of limitations from age 28 to age 42.
(2) Extending civil statute of limitations after the time of discovery, from three years to seven years.
(3) Eliminating civil statute of limitations if there is a criminal conviction.
(4) Establishing a two-year revival window for survivors whose statute of limitations previously expired.
(5) Removing governmental immunity for criminal sexual assault in some circumstances.

In relevant part, the legislation also would remove governmental immunity from public universities, colleges or schools or their employees for criminal sexual conduct, if the institution "knew or should have known" that the perpetrator had committed a prior

similar act and the institution failed to respond adequately to it. Specifically, House Bill 4486 would amend 1964 PA 170, the governmental immunity law, to provide that the act does not grant immunity to a governmental agency or its employees or agents regarding conduct involving CSC if the agency or employees or agents knew or should have known that an individual had committed a prior act of CSC and failed to act or intervene to prevent a subsequent act of CSC by that individual. The bill would provide that it is curative, must be retroactively applied, applies to actions pending on its effective date, and is intended to express the original intent of the legislature regarding the application of the act that the bills would amend.

Plaintiff avers, governmental immunity is further addressed in the next argument as it relates to gross negligence and applicability under the Government Tort Liability Act (GTLA), MCL 691.1401 et seq.; MSA 3.996(101) et seq.

**E.  PLAINTIFF'S GROSS NEGLIGENCE CLAIM SHOULD NOT BE DISMISSED WHERE THERE IS EVIDENCE OF THE LEGISLATURE'S INTENT TO EXPAND MCL 600.5851b TO REMOVE GOVERNMENTAL IMMUNITY FROM PUBLIC UNIVERSITIES, COLLEGES, SCHOOLS OR THEIR AGENTS, OFFICERS, OR EMPLOYEES BASED ON KNOWLEDGE OR AVAILABLE EVIDENCE THE INDIVIDUAL COMMITTED PRIOR ACTS OF CRIMINAL SEXUAL CONDUCT CONSTITUTING AN INDIFFERENCE TO WHETHER HARM WILL RESULT:**

Defense argued, Plaintiff has not properly pled a claim for Gross Negligence against the School District because the language in MCL 691.1407(2) did not intend to hold a governmental entity or its' officers or employees liable for gross negligence. MCL 691.1407(2) provides as follows:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency <u>if all</u> of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> **(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage**. (emphasis added).
>
> Plaintiff concedes, MCL 691.1407(2) provides immunity if all three factors are met.

It is undisputed that the Defendants Coleman and White were acting within their scope of their employment as the e superintendent of the school and Principal of River Rouge High School and the River Rouge School District was engaged in the exercise of governmental functions within the scope of their governmental authority thereby satisfying factors (a) and (b). Factor (c), considers whether the conduct amounts to "gross negligence" based on the "proximate cause" of the "personal injury or damage." Generally, the gross negligence language reflects the "proximate cause" arising from "personal injuries" or "property

damage"[2] and thus considered an "intentional tort." Unlike this case, which involves "criminal misconduct" which is not considered an intentional tort resulting in personal injuries or property damage.

For clarification of gross negligence, Plaintiff asserts, the government tort liability act, MCL 691.1401 et seq.; MSA 3.996(101) et seq. (GTLA), confers varying degrees of immunity to governments, their agencies, and their agents. Section 7 immunizes government employees and volunteers from tort liability for acts causing injury during the course of government service as long as the "conduct does not amount to gross negligence...." **Section 7 defines gross negligence as <u>conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results</u>**.

Clearly, in enacting § 7 of the GTLA, the Legislature intended to immunize government agents from liability for ordinary negligence. **The Legislature recognized the need to provide <u>limited</u> immunity to government agents.** In this sense, the GTLA has a common purpose of immunizing certain agents from ordinary negligence and permitting liability for gross negligence. Because the provisions have a common purpose, the terms of the provisions should be read in pari materia. "The object of the rule in pari materia is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject." [*Wayne Co v Auditor General,* 250 Mich 227, 233; 229 NW 911 (1930).][[10]] Because these provisions should be read in pari materia, Plaintiff avers it is appropriate to

---

[2] Governmental immunity cases under the Governmental Tort Liability Act ("GTLA") usually involve personal injury or property damage tort claims made by individuals against governmental agencies or employees.

use the definition of gross negligence as found in § 7 of the GTLA, as the standard for gross negligence.

Accordingly, pursuant to Section 7 of the GTLA, gross negligence is a viable claim where the conduct was reckless and shows an indifference to whether injuries could occur. Furthermore, as discussed herein, the Legislature passed House Bill 4486 which would amend 1964 PA 170, the governmental immunity law, to provide that the act does not grant immunity to a governmental agency or its employees or agents regarding conduct involving CSC if the agency or employees or agents knew or should have known that an individual had committed a prior act of CSC and failed to act or intervene to prevent a subsequent act of CSC by that individual. The referenced House Bill is consistent with MCL 691.1407(2)(c) and Section 7 of the of the GTLA, which clearly intended to limit immunity under certain circumstances, which has been extended to include allegations of prior CSC.

Therefore, Defendants' claims of governmental immunity for the School District, and Defendants Coleman and White resulting from the criminal acts of Defendant Mark White are inapplicable or creates a question of fact for a jury to decide. In the alternative, Plaintiff's claim for gross negligence should be preserved based on the Legislative intent to expand **MCL 600.5851b** to remove governmental immunity and for the retroactive application thereof for CSC claims for liability.

Michigan courts have applied the standard for wilful and wanton misconduct as explained in Gibbard. Gibbard described the required elements: "(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2)

ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." [Id. at 322.]

Plaintiff argues (1) Each of the Defendants knew or should have known of the prior allegations of criminal sexual conduct against Co-Defendant Mark White involving students while employed as a Basketball Coach at several other high schools thereby requiring the exercise of ordinary care not to hire sexual predators or due diligence to protect the students from any sexual assaults from Co-Defendant Mark White.

Plaintiff further agues (1) Defendants had the ability to avoid the sexual assault and battery by exercising ordinary care not to hire sexual predators and diligence in the use of the policies and methods available to the school. (i.e. Contact Restrictions; ). Lastly, Plaintiff argues, (3) the need to exercise ordinary care and diligence to protect the students from sexual assaults was apparent and more probable than not to result in students being sexually assaulted by Defendant Mark White.

In *Gibbard,* the Court acknowledged that a willful or wanton act differed from a negligent act. "If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The Court clarified Gibbard's wilful and wanton misconduct in *Burnett v City of Adrian*, 414 Mich 448; 326 NW2d 810 (1982). Burnett illuminated, the requirements of the three-pronged test: If the three-prong test is read in the context of the instructive analysis which

precedes it in Gibbard, it becomes evident that the rule of the case is that willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.

Willful and wanton misconduct is not, as the *Gibbard* Court observed, a high degree of carelessness. The poorly phrased three-prong test for willful and wanton misconduct in *Gibbard* is cast entirely in language of ordinary negligence until, in the <u>third element</u>, it is said that it must be shown that an injury "is likely." It is in that concept the notion that in the circumstances of a given case the injury is probable, or to be expected, or likely that is found the requisite indifference to harm tantamount to a willingness that it occurs, if not a specific intent that it does, which distinguishes willful and wanton misconduct from ordinary negligence. [Id. at 455-456. Emphasis added.]

Willful and wanton misconduct, on the other hand, describes conduct that is either willful i.e., intentional, or its effective equivalent. "Willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, **such indifference to whether harm will result as to be the equivalent of a willingness that it doe**s." *Burnett* at 455 (emphasis added).  "One who is properly charged with ... wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the willful doer of wrong.

The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing

to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not." [G*ibbard* at 321.]

Plaintiff concedes that the sexual assault was the direct cause of the conduct of Defendant Mark White and said conduct did not occur outside the control of the school district or the Defendants Coleman and White, where said Defendants were in control of hiring and supervising of Defendant Mark White. Plaintiff has alleged that the Defendants, School District, Coleman and Willie White had prior knowledge or should have had knowledge of the criminal sexual conduct allegations against Mark White in his position as a Coach by other high school students, specifically, sexual assault involving student athletics. Defendants' failures independently or combined demonstrates a reckless disregard for safety of the students, and the establishes the required deliberate indifference to the possibility of CSC, where the information was known, publicized and/or available creates a question of fact for a jury to decide. [G*ibbard* at 321.]

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests that this Court DENY this Motion to Dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(c).

Respectfully submitted,

Dated: October 6, 2024

*/s/Renette Jackson*
Renette Jackson (P69002)
Attorney for Plaintiff
26677 W. 12 Mile Road

        Southfield, MI. 48034
        248-910-5415
        Arjackson@ajatlaw.net

### *CERTIFICATE OF SERVICE*

    I hereby certify that on October 7, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

        Respectfully submitted,


Dated: October 7, 2024          */s/Renette Jackson*
        Renette Jackson (P69002)
        Attorney for Plaintiff
        26677 W. 12 Mile Road
        Southfield, MI. 48034
        248-910-5415
        Arjackson@ajatlaw.net